UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X    Case No.
PATRICIA DRAYTON, DARWIN DAVID RHODES,    07-CV-06315
VALERIE KIRK, CLYDE CONES, ANGELA STALLINGS,    (RMB)(JCF)
LAI-QUANA UTLEY, IDA JACKSON, ERICA MILLER,
TERESA BRANCH, LINDA LOVING, PATRICIA WEAVER,
MARGARET HIGH and DENISE SCOTT, for themselves
and on behalf of all similarly situated
African Americans who shopped at Toys 'R' Us
stores since 2004, or who will shop at said
Toys 'R' Us stores,

                        PLAINTIFFS,    **JURY TRIAL**
                                       **DEMANDED**

-against-


TOYS "R" US INC, TOYS "R" US-NY, LLC, TOYS
"R" US-OHIO, INC., JOHN DOE #s1-5, being
individual managerial staff of Toys "R" Us
Store No. 8930,  METRO ONE LOSS PREVENTION
GROUP (GUARD DIVISION NY), INC. ("METRO ONE"),
ROCKY ETIENNE, individually, and in his official
capacity as an employee of METRO ONE; MARK
MCMAHON, individually, and in his official
capacity as an employee of METRO ONE;
"JOE SHERIFF", real name unknown, the person
intended being a Sheriff's Deputy of the
Hamilton County Sheriff's Department,
Cincinnati, Ohio, who accosted Darwin David
Rhodes at a Toys 'R' Us store on or about
January 25, 2006, "P.O. TODD", real name
unknown, the person intended being a police
officer of the City of Cincinnati, Ohio,
who arrested Darwin David Rhodes in or about
April 2006 for alleged theft at a Toys 'R' Us
store on January 25, 2006, CITY OF CINCINNATI,

                                       FIRST CLASS
                        DEFENDANTS     ACTION AMENDED
-------------------------------------------X    <u>COMPLAINT</u>


    Plaintiffs,  by  their  attorneys, THE LAW OFFICES OF ROY &

ASSOCIATES, P.C., and the LAW OFFICES OF K.C. OKOLI, P.C. ,

complaining of the Defendants allege as follows:

## PRELIMINARY STATEMENT

1. This is a class action lawsuit seeking declaratory, injunctive, and monetary reliefs against the defendants who, in violation of plaintiffs constitutional rights, engaged in a continuing pattern and practice of discriminatory stops, searches, harassment and unequal treatment of the plaintiffs and other African American shoppers at Toys 'R' Us stores, while non-African American shoppers were not subjected to a similar treatment.

2. The named plaintiffs herein represent the class of African American shoppers who have been subjected to similar treatment when they shopped at Toys 'R' Us stores.

3. The claims are brought pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§1981 and 1983, and the New York Executive Law §296 et. seq.

4. Notice of this Action was sent by United States Postal Service First Class Mail to the New York State Attorney's office.

5. At all times mentioned herein, the individual named defendants were either acting under color or state law, or acting in concert with someone so acting.

**JURISDICTION**

6.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a) and 2201.

7.  Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. §1391.

8.  This Court may exercise supplemental jurisdiction over any state law claims herein 28 U.S.C. 1367 et. seq.

**PARTIES AND RELATIONSHIPS**

9.  Plaintiff Patricia Drayton ("DRAYTON"), is an African American female who, at all times relevant to this action, resides in Bronx County, State of New York.

10. Plaintiff Darwin D. Rhodes ("RHODES"), is an African American male who, at all times relevant to this action, resides in Cincinnati, State of Ohio.

11. Plaintiff Valerie Kirk ("KIRK"), is an African American female who, at all times relevant to this action, resides in the City and State of New York.

12. Plaintiff Clyde Cones ("CONES"), is an African American male who, at all times relevant to this action, resides in Bronx County, New York.

13. Plaintiff Angela Stallings ("STALLINGS"), is an African American female who, at all times relevant to this action,

3

resides in Bronx County, New York.

14.  Plaintiff Lai-Quana Utley ("UTLEY"), is an African American
     female who, at all times relevant to this action, resides in
     Bronx County, New York.

15.  Plaintiff Ida Jackson ("JACKSON"), is an African American
     female who, at all times relevant to this action, resides in
     Jamaica, Queens County, New York.

16.  Plaintiff Erica Miller ("MILLER"), is an African American
     female who, at all times relevant to this action, resides in
     Amityville, New York.

17.  Plaintiff Teresa Branch ("BRANCH"), is an African American
     female who, at all times relevant to this action, resides in
     Freeport, New York.

18.  Plaintiff Linda Loving ("LOVING"), is an African American
     female who, at all times relevant to this action, resides in
     Bronx County, New York.

19.  Plaintiff Patricia Weaver ("WEAVER"), is an African American
     female who, at all times relevant to this action, resides in
     Bronx County, New York.

20.  Plaintiff Margaret High ("HIGH"), is an African American
     female who, at all times relevant to this action, resides in
     Hoboken, State of New Jersey.

21.  Plaintiff Denise Scott ("SCOTT"), is an African American
     female who, at all times relevant to this action, resides in

Hoboken, State of New Jersey.

22.  Defendant Toys "R" Us, INC. is headquartered in Wayne, New
     Jersey, and has locations in the State of New York for the
     transaction of business within the Southern District.

23.  Defendant Toys "R" Us, Inc. sells toys and baby products
     through its 586 toy stores in the United States, including
     the State of New York, and has 670 international toy stores,
     including licensed and franchise stores, as well as through
     its Internet site at www.toysrus.com.

24.  Defendant Toys 'R' Us, Inc., owns Babies "R" Us which is the
     largest baby product specialty store chain in the world and
     a leader in the juvenile industry, and sells merchandise in
     more than 250 stores in the U.S., including the State of New
     York, as well as on the Internet at www.babiesrus.com.

25.  At the time of the commencement of this action Defendant
     Toys "R" Us-NY LLC, was and still is a domestic corporation
     duly organized and existing under and by virtue of the laws
     of the State of New York.

26.  Defendant Toys 'R' Us, Inc., and defendant Toys "R" Us-NY
     LLC are together referred to herein as "Toys 'R' Us".

27.  At the time of the commencement of this action Defendant
     Metro One Loss Prevention Services Group (Guard Division)
     Inc. ("METRO ONE") was and still is a foreign domestic
     corporation duly authorized to transact business under by

virtue of the laws of the State of New York.

28. At the time of the commencement of this action, Defendant METRO ONE resides in Staten Island, New York. Defendant METRO ONE provides loss prevention services to retail stores such as Toys "R" Us, in the State of New York, among other states.

29. Defendant Rocky Etienne ("ETIENNE") was, at all times relevant to this action, an employee of METRO ONE and was acting in the course and within the scope of his employment as an armed store security guard.

30. At the time of the commencement of this action, and at all times relevant to this action, ETIENNE was an employee of Defendant METRO ONE as an Armed Guard with Peace Officer status, powers and authority.

31. On July 10, 2006, Defendant ETIENNE worked at the Toys "R" Us store located in Bronx, New York, and participated in the violation of the constitutional rights of DRAYTON.

32. As per Toys "R" Us' asset protection and loss prevention policies and practices, ETIENNE was assigned to the duties of checking and verification of sales receipts of customers exiting Toys "R" Us on July 10, 2006.

33. At all times mentioned in this action, ETIENNE was a Correction Officer with the New York State Department of Correctional Services ("DOCS").  As a Peace Officer, ETIENNE

acted and continues to act under color of state law by having powers vested in him by the State of New York.

34. At the time of the commencement of this action and at all times relevant to this action, defendant Mark McMahon ("McMAHON") was an employee of defendant METRO ONE, under the employ as a Security Guard with Special Patrolman/Peace Officer powers and authority granted to him by the City of New York and/or the State of New York.

35. On July 10, 2006, McMAHON worked at the Toys "R" Us store located in Bronx, New York, and participated in the violation of the constitutional rights of DRAYTON.

36. As per Toys "R" Us' asset protection and loss prevention policies, McMAHON was assigned to the duties of checking and verification of sales receipts of customers exiting Toys "R" Us on July 10, 2006. McMAHON, a Special Patrolman and/or Peace Officer acts and has acted within the scope of his employment and under color of state law by virtue of the powers vested in him by the State of New York and/or the City of New York.

37. Said ETIENNE and McMAHON were specifically hired by Toys "R" Us and METRO ONE to use their peace officer status to act as a deterrent to shrinkage of Toys "R" Us' assets, and make warrantless arrests of shoplifters and check customers shopping at Toys "R" Us stores.

38.  At all times relevant to this action, Joe Sheriff ("SHERIFF") was a Sheriff's Deputy with the Hamilton County Sheriff's Department, in Cincinnati, State of Ohio.

39.  At all times relevant to this action, P.O. Todd ("TODD"), was a police officer employed by the City of Cincinnati, State of Ohio.

## ALLEGATIONS AS TO NAMED PLAINTIFFS

### A.    The Illegal Seizure, Search and Arrest of DRAYTON

40.  On July 10, 2006, Drayton, her three grandsons and their mother, Nancy Soltren, all shopped at a Toys "R" Us store located at 970 White Plains Road, Bronx, New York, between the hours of 4:00 PM to 6:30 PM.

41.  Drayton and her family went to shop at said Toys "R' Us so her three-year old grandson can pick out birthday presents for his birthday, which was that day.

42.  After Drayton's grandson had selected items for his birthday presents and Drayton picked up some diapers and other merchandise, Drayton and her family went to the cashier where they paid for the selected items at approximately 6:05 p.m. The cashier was one Mavis Brown who received a cash payment of $63.95 from Drayton for the purchase.

43.  After Ms. Brown handed Drayton her sales receipt, Drayton

and her family began to walk towards the store's exit.
Because Drayton had her three year old and four year old
grandsons, Drayton asked Ms. Soltren to walk ahead of her.

44. Ms. Soltren with her 18 month old son in the stroller with
Toys "R" Us shopping bags walked out of TOYS "R" US' store
without being stopped, or her receipt checked by Toys "R"
Us' and METRO ONE'S security guard at the door.

45. Ms. Soltren is a very light skinned Hispanic woman, who
could be easily be mistaken for a Caucasian woman.

46. As Drayton who was a few steps behind Ms. Soltren,
approached the exit, ETIENNE and McMAHON demanded that
Drayton present her sales receipt for inspection before she
could exit the store.

47. Drayton who had just witnessed Ms. Soltren, as well as some
Caucasians exit the store without being asked to present
their receipts for checking declined to show her sales
receipt.

48. As Drayton attempted walk around ETIENNE and McMAHON, they
blocked her forward progress by standing in front of her
shopping cart.

49. At no time did ETIENNE or McMAHON accuse Drayton of
shoplifting or inform Drayton that she was suspected of
shoplifting.

50. There was no legal justification for ETIENNE and McMAHON to

conduct themselves the way they did towards Drayton on that day.  Based upon her observation on that day, Drayton believes that the defendants stopped her to demand a check of her receipt because of her race and color.

51.  Drayton advised ETIENNE and McMAHON that showing her sales receipt was an inconvenience for her search her bags while keeping a watchful eye on two of her grandsons.  Drayton also advised ETIENNE and McMAHON that she was in a rush to get home to start my grandson's birthday party.  Guests for Plaintiff Drayton's grandson's birthday party were waiting at Drayton's home.

52.  While still detaining Drayton against her will and preventing her from leaving the store, ETIENNE and McMAHON called the cashier, Ms. Brown, to come and confirm if Drayton had made a purchase although they never told her she was suspected of shoplifting.

53.  Ms. Brown confirmed that Drayton had, in fact, made a purchase.  Drayton was detained for approximately 30 minutes after which she was eventually released and let go.

54.  As Drayton and her family emerged from the store upon being released by ETIENNE and McMAHON, a male White shopper who was not asked to show a sales receipt was upset at the treatment which Drayton and her family received, and commented to Drayton that he did not like how the guard

10

treated Drayton and her "sons" because he was not asked to
present his receipt when he exited Toys "R" Us.

55. Drayton was felt embarrassed and humiliated by the entire
incident which made her look like a common thief.

56. Drayton runs a local private day care center, and some
parents, friends, and others who knew her either witnessed
or later heard about the incident.

57. Since the Toys 'R' Us store incident of July 10, 2006,
Drayton's day care business has suffered a decline.  Drayton
believes that the decline is directly related to the
aforesaid incident.

58. Drayton believes that if she were Caucasian, and not African
American, the defendants would have let her leave the store
without checking her receipt just like they did for other
non-African American shoppers on that day.

59. Drayton has been a victim of Defendants Toys "R" Us' and
METRO ONE's discriminatory sales receipt checking policy
while shopping at a Toys "R" Us store in the State of New
York.

60. Drayton has been injured and risks further harm as a result
of the Defendants TOYS "R" US' and METRO ONE'S illegal acts
and omissions.

61. Drayton seeks to represent a class of individuals described
below.

11

**B.    Unlawful Search and Seizure of RHODES and**
**     <u>Interference with RHODES' Right to Contract</u>**

62.  On or about January 25, 2006, Rhodes was lawfully present at
     Toys 'R' Us store No. 8930 located in Cincinnati, Ohio for
     the purpose of purchasing video games.

63.  While shopping in said Toys 'R' Us store, Rhodes was
     profiled, and followed by Joe SHERIFF and Toys 'R' Us
     employees.

64.  Rhodes noticed that White shoppers were also shopping at
     Store No. 8930 at the same time that he was shopping, but
     noticed that no sheriff or Toys 'R' Us employees were
     following said White shoppers.

65.  In the section where video games are sold in Store No. 8930,
     Rhodes was testing a video game at a console that was placed
     and set up in the common area of the store for customers to
     test and try out video games prior to purchasing same, if
     they wanted.

66.  Without any legal justification, SHERIFF and a Toys 'R' Us
     employee approached and surrounded Rhodes, at which point
     Rhodes inquired of both of them whether there was a problem.

67.  SHERIFF responded that there was a problem and that the
     store manager called him in because Rhodes looked suspicious
     and looked as if Rhodes might steal something.

68.  Rhodes, who was shocked replied that he was just trying out

the video game and pulled out some money and informed SHERIFF and the store manager that he had money to purchase a video game after he was satisfied testing it out first.

69. At the same time that Rhodes was testing out a video game, there were other White shoppers who were also testing out video games on adjacent video game consoles. Neither SHERIFF or the store manager accosted, questioned, disturbed or indicated to them that they looked suspicious, and looking as if they might steal something.

70. Rhodes informed the SHERIFF and the Store manager that he liked the video game which he was testing out and would want to proceed to the cash register to purchase same.

71. Sheriff and the Store manager told Rhodes that he could leave the store but only after he was "checked out by the law".

72. SHERIFF further informed Rhodes that Rhodes could not leave until a warrant check indicated that he had no outstanding arrest warrants or "priors".

73. In plain view of numerous customers in front of the cashiers registers, SHERIFF began to frisk, pat down and interrogate Rhodes.

74. After several long minutes, the dispatcher contacted SHERIFF and indicated in a clearly audible voice that RHODES had no warrants or priors.

13

75. Plaintiff RHODES requested his driver license back and asked if he could purchase the video game in which he tried out and liked.

76. The MANAGER informed RHODES that he could not purchase the video game or anything else, and that he had to leave the store immediately because men like him were not welcome to purchase at his store.

77. In plain view of several customers in front of the cashier registers, the MANAGER took the Plaintiff RHODES' driver's license, wrote information on a sheet of paper and warned RHODES that if he ever set foot in the store he would be arrested for shoplifting and trespassing.

78. SHERIFF and the manager returned RHODES' driver's license to him.

79. Both SHERIFF and the manager then escorted RHODES out TOYS "R" US' Store No. 8930.

80. RHODES felt stressed out, humiliated and embarrassed by the whole incident and the public spectacle which the defendants made of it.


C. **Unlawful Seizure/Prosecution of RHODES in April 2006**

81. In April 2006, RHODES was arrested in front of his family, friends and neighbors, by members of the Hamilton County Sheriff's Office and Cincinnati Police Department.

82.  The reason which they gave for the arrest was that RHODES
     had stolen from Toys 'R' Us store on or about January 25,
     2006, and charged him with theft.  This arrest was based
     upon the same incident which occurred at Store No. 8930,
     four months before.

83.  Plaintiff was arraigned in court on this bogus charge and
     spent twelve (12) days in unlawful detention.

84.  Defendants continued to prosecute RHODES on this bogus
     charge, without any reasonable cause or likelihood of
     success until the charge was dismissed against him on or
     about April 23, 2007, one year later.

85.  Since this arrest and prosecution of RHODES, this incident
     comes up on his background check and it has negatively
     affected RHODES employment opportunities.


D.   **Racial discrimination, interference with right
     to contract, illegal seizure, search and arrest
     of KIRK by defendants Toys "R" Us and METRO ONE**

86.  On or about September 12, 2006, KIRK was lawfully present at
     TOYS "R" US' Store No. 6352, located at 970 White Plains
     Road, Bronx, New York 10473.

87.  After duly making her purchase, KIRK was unlawfully detained
     by a TOYS "R" US' employee and/or a METRO ONE employee for
     failure to show her sales receipt to said employees. Said
     employees advised KIRK that she could not exit Store No.

6352 until she showed her sales receipt to them.

88.   While being unlawfully detained, KIRK noticed that White shoppers/customers were exiting  Store No. 6352 without having their sales receipts checked or being detained.

89.   After complaining to said employees that they could not force her to show her sales receipt and that Caucasian customers were exiting the store without having their sales receipts checked, KIRK was then allowed to exit the store.

90.   On or about November 23, 2007 KIRK purchased merchandise for her daughter, at the same Store No. 6352 at on White Plains Road, Bronx, New York.

91.   As KIRK exited Toys "R" Us, without probable cause, or any legal justification a Toys "R" Us' or METRO ONE security employee demanded that KIRK present her sales receipt as a condition of exiting the store.

92.   KIRK declined to show her sales receipt, and commented to the afore-mentioned security employee that she has shopped at some Toys "R" Us stores in White neighborhoods in Pennsylvania, New Jersey and New York, and has never been asked to show her sales receipt at these stores.  She further told them that they were only checking receipts at the Bronx store because the store is located in African American and heavily immigrant populated neighborhood.

93.   As KIRK exited the store and in response to declining to

show her sales receipt, the store security told her that if
she didn't like the policy she doesn't have to shop here
anymore and, in fact, banned her from ever shopping at the
store.

94.   Pursuant to New York Executive Law § 296 et. seq., notice of
the racial discrimination mentioned herein was furnished to
the New York State Attorney General Office.


**E.    RACIAL DISCRIMINATION, DENIAL OF EQUAL BENEFITS OF THE LAWS**
      **Illegal Seizure, Search and Arrest Of Plaintiff CONES BY**
      **DEFENDANT TOYS "R" US AND METRO ONE**

95.   On or about May 15, 2007, without any legal justification
CONES was stopped, detained and asked to present his sales
receipt of merchandise by store security while exiting TOYS
"R" US Store No. 6315, located at 641 ROUTE 440 JERSEY CITY,
NJ 07304.

96.   At the time that he was asked to show his receipt, CONES
observed that, White customers exited said Store without
being stopped, detained or having their sales receipts
requested to be inspected.

97.   At other times between January 01, 2004 and December 01,
2007, CONES had shopped at TOYS "R" US' Store No. 6352
located at 970 White Plains Road, Bronx, New York, wherein
he was stopped, detained and his sales receipt requested for
inspection as a condition to exit said TOYS "R" US store.

17

98.  During those times that his receipt was requested for
     inspection, CONES observed White customers exit said TOYS
     "R" US store without being stopped, detained or having their
     sales receipts requested to be inspected.

99.  When he shopped at TOYS "R" US' stores located in
     predominantly White communities he was followed by store
     security employees, and there is no one checking or asking
     to check the receipt of shoppers at the exit of those
     stores.

100. CONES has shopped at TOYS "R" US' stores located at 1701
     MORRIS AVENUE UNION, NJ 07083 (Store No. 6329) and 250 EAST
     ROUTE 4 PARAMUS, NJ 07652 (Store No. 6306), wherein there
     were no TOYS "R" US' employees, agents, members, and
     affiliates posted at the exit doors requesting to inspect
     the sales receipts of customers.

101. Pursuant to New York Executive Law § 296 et. seq., notice of
     the racial discrimination mentioned herein was furnished to
     the New York State Attorney General Office.

**F.   Racial Discrimination, Denial of Equal Benefits of the Laws,
       Illegal Seizure of STALLINGS by Toys "R" Us and METRO ONE**

102. On or about March 12, 2005, without legal justification,
     STALLINGS was stopped, detained and asked to present her
     sales receipt of merchandise by store security while exiting
     TOYS "R" US Store No. 6336 located at 350 Baychester Avenue,

Bronx, New York, 10475.

103. During this time  STALLINGS observed that White customers exited said TOYS "R" US store without being stopped, detained or having their sales receipts requested to be inspected.

104. At other times between January 01, 2004 and December 01, 2007, STALLINGS shopped at TOYS "R" US' Store No. 6352, located at 970 White Plains Road, Bronx, New York, 10473, wherein she was stopped, detained and her sales receipt requested for inspection as a condition to exiting said TOYS "R" US store.

105. At those times when STALLINGS shopped at said Store No. 6352, she observed White customers exit said store without being stopped, detained or having their sales receipts requested to be inspected.

106. STALLINGS has noticed that when she has shopped at TOYS "R" US' stores located in predominantly White communities there was  no receipt inspection policy in effect. STALLINGS has shopped at TOYS "R" US' stores located at 117 Old Country Road, Carle Place, New York 11514 (Store No. 6311) and 3501 Hempstead Turnpike , Levittown, New York (Store No. 6302), wherein no receipt checking was taking place.

107. Pursuant to New York Executive Law §296 et. seq., notice of the racial discrimination mentioned herein was furnished to

the New York State Attorney General Office.


**G.    Racial Discrimination, Denial of Equal
       Benefit of the Laws, Illegal Seizure of
       <u>UTLEY by defendants Toys "R" Us and METRO ONE</u>**

108. On or about December 21, 2006, without any legal

     justification, UTLEY was stopped, detained and asked to

     present her sales receipts of merchandise while exiting Toys

     "R" Us store located at 970 White Plains Road, Bronx, New

     York, 10473 (Store No. 6352). At the time, UTLEY observed

     that White customers exited said store without being

     stopped, detained or having their sales receipts requested

     to be inspected.

109. At other times between January 01, 2004 and December 01,

     2007, UTLEY shopped at the same store No. 6352, wherein she

     was stopped, detained and her sales receipt requested for

     inspection as a condition to exiting said store.

110. On those occasions when UTLEY shopped between January 2004

     and December 2007, UTLEY observed White customers exit said

     store without being stopped, detained or having their sales

     receipts requested to be inspected.

111. UTLEY has also noticed that when she has shopped at TOYS "R"

     US' stores located in predominantly White communities there

     is no receipt inspection policy in effect. UTLEY has shopped

     at TOYS "R" US' stores located at 60 South Broadway, White

                              20

Plains, New York 10601 (Store No. 6347) and at 1000 Central Park Avenue Yonkers, New York 10704 (Store No. 6329), wherein there were no store security or employee at the exit requesting to inspect the sales receipts of customers.

112. Pursuant to New York Executive Law §296 et. seq., notice of the racial discrimination mentioned herein was furnished to the New York State Attorney General Office.


**H.    Racial Discrimination, Denial of Equal Benefits of the Laws, Illegal Seizure of JACKSON by defendants Toys "R" Us and METRO ONE**

113. On or about December 23, 2006, without any legal justification, JACKSON was stopped, detained and asked to present her sales receipts for merchandise while exiting a Toys "R" Us store located at 300 West Sunrise Highway, Valley Stream, New York, 11580 (Store No. 6310).

114. During that time, JACKSON observed that White customers exited said TOYS "R" US store without being stopped, detained or having their sales receipts requested to be inspected.

115. At other times between January 01, 2004 to December 01, 2007, JACKSON has shopped at 300 West Sunrise Highway, Valley Stream, New York, 11580 (Store No. 6310), wherein she was stopped, detained and her sales receipt was requested for inspection as a condition for exiting said store.

21

116. On the occasions when JACKSON shopped as aforesaid, she observed White customers exit said TOYS "R" US store without being stopped, detained or having their sales receipts requested to be inspected.

117. JACKSON has noticed that when she shopped at TOYS "R" US' stores located in predominantly White communities there is no receipt inspection policy in effect. JACKSON has shopped at TOYS "R" US' stores located 117 Old Country Road, Carle Place, New York 11514 (Store No. 6311), where there was no one requesting customers to present their tickets for inspection.

118. Pursuant to New York Executive Law § 296 et. seq., notice of the racial discrimination mentioned herein was furnished to the New York State Attorney General Office.


I.    **Racial Discrimination, Denial of Equal Benefits of the Laws, Illegal Seizure of MILLER by Toys "R" Us and METRO ONE**

119. On or about December 20, 2006, without any legal justification, MILER was stopped, detained and asked to present her sales receipt for merchandise while exiting Toys "R" Us store located at 300 West Sunrise Highway, Valley Stream, New York, 11580 (Store No. 6310).

120. At the time, MILLER observed that White customers exited said store without being stopped, detained or having their

sales receipts requested to be inspected.

121. At other times between January 01, 2004 to December 01,
     2007, MILLER has shopped at 300 West Sunrise Highway, Valley
     Stream, New York, 11580 (Store No. 6310), wherein she was
     stopped, detained and her sales receipt was requested for
     inspection as a condition for exiting said store.

122. During the times that MILLER shopped as aforesaid, she
     observed White customers exit said store without being
     stopped, detained or having their sales receipts requested
     for inspection.

123. MILLER has noticed that when she shopped at TOYS "R" US'
     stores located in predominantly White communities there is
     no receipt inspection policy in effect. MILLER has shopped
     at TOYS "R" US' stores located 5520 Sunrise Highway,
     Massapequa, New York 11758 (Store No. 6309), where there was
     no one checking customers' receipts.

124. Pursuant to New York Executive Law § 296 et. seq., notice of
     the racial discrimination mentioned herein was furnished to
     the New York State Attorney General Office.


**J.   Racial Discrimination, Denial of Equal**
       **Benefits of the Laws, Illegal Seizure**
       **of BRANCH by Toys "R" Us and METRO ONE**


125. On or about September 10, 2007, without any legal
     justification, BRANCH was stopped, detained and asked to

present her sales receipt for merchandise while exiting a
Toys "R" Us stored located at 300 West Sunrise Highway,
Valley Stream, New York, 11580 (Store No. 6310).

126. At the time, BRANCH observed that White customers exited
said store without being stopped, detained or having their
sales receipts requested for inspection.

127. At other times between January 01, 2004 and December 01,
2007, BRANCH has shopped at 300 West Sunrise Highway, Valley
Stream, New York, 11580 (Store No. 6310), where she was
stopped, detained and her sales receipt requested for
inspection as a condition for exiting said store.

128. During the times that BRANCH shopped as aforesaid, she
observed White customers exited said store without being
stopped, detained or having their sales receipts requested
for inspection.

129. BRANCH has noticed that when she has shopped at TOYS "R" US'
stores located in predominantly White communities there is
no receipt inspection policy in effect. BRANCH has shopped
at TOYS "R" US' stores located 5520 Sunrise Highway,
Massapequa, New York 11758 (Store No. 6309) and 117 Old
Country Road, Carle Place, New York 11514 (Store No. 6311),
where no receipt inspection policy was in place.

130. Pursuant to New York Executive Law § 296 et. seq., notice of
the racial discrimination mentioned herein was furnished to

24

the New York State Attorney General Office.

**K.    Racial Discrimination, Denial of Equal
        Benefits of the Laws, Illegal Seizure
        of LOVING by Toys "R" Us and METRO ONE**

131. On or about November 24, 2006, without any legal
     justification, LOVING and her nine year old son were
     stopped, detained and asked to present a sales receipt for
     her purchase of merchandise while exiting Toys "R" Us
     located at 970 White Plains Road, Bronx, New York, 10473
     (Store No. 6352).

132. At the time, LOVING observed that White customers exited
     said store without being stopped, detained or having their
     sales receipts requested fo inspection.

133. At other times between January 01, 2004 and December 01,
     2007, Plaintiff LOVING has shopped at the same TOYS "R" US'
     Store No. 6352, where she was stopped, detained and her
     sales receipt was requested for inspection as a condition
     for exiting said store.

134. During the times that LOVING shopped as aforesaid, she
     observed White customers exit said store without being
     stopped, detained or having their sales receipts requested
     for inspection.

135. LOVING has noticed that when she has shopped at TOYS "R" US'
     stores located in predominantly White communities there is

25

no receipt inspection policy in effect. LOVING has shopped at TOYS "R" US' stores located at 60 South Broadway, White Plains, New York 10601 (Store No. 6347),1000 Central Park Avenue Yonkers, New York 10704 (Store No. 6329), and at 692 Broadway, New York, New York (Store No. 6592), where ther3e was no one inspecting receipt of shoppers.

136. Pursuant to New York Executive Law § 296 et. seq., notice of the racial discrimination mentioned herein was furnished to the New York State Attorney General Office.


L.    **Racial Discrimination, Denial of Equal Benefits of the Laws, Illegal Seizure of WEAVER by Toys "R" Us and METRO ONE**

137. On or about March 13, 2007, without any legal justification, WEAVER and her three daughters were stopped, detained and asked to present sales receipts for merchandise while exiting a Toys "R" Us store located at 970 White Plains Road, Bronx, New York, 10473 (Store No. 6352).

138. At the time, as WEAVER attempted to exit said TOYS "R" US store, two of WEAVER'S daughters who are bi-racial (African-American and Caucasian) were permitted to exit the store without anyone requesting to inspect their receipts.

139. WEAVER and her third daughter who are both dark skinned African-Americans were detained and not permitted to leave the store until WEAVER'S sales receipt was presented to TOYS

"R" US' and METRO ONE'S employees who were in charge of
security at the exit.

140. At other times between January 01, 2004 and December 01,
2007, WEAVER has shopped at said store No. 6352 where she
was stopped, detained and her sales receipt requested for
inspection as a condition for exiting said store.

141. WEAVER has noticed that when she has shopped at TOYS "R" US'
stores located in predominantly White communities there is
no receipt inspection policy in effect. WEAVER has shopped
at TOYS "R" US' stores located 1000 Central Park Avenue
Yonkers, New York 10704 (Store No. 6329), where shoppers
were not asked to present their receipts for inspection.

142. Pursuant to New York Executive Law § 296 et. seq., notice of
the racial discrimination mentioned herein was furnished to
the New York State Attorney General Office.


**M.    Racial Discrimination, Denial of Equal
Benefits of the Laws, Illegal Seizure
of HIGH by Toys "R" Us and METRO ONE**

143. In 2007, HIGH shopped several times at the Toys "R" Us store
located in Jersey City, New Jersey, where she was stopped
and asked to present her receipt for purchase of merchandise
for inspection before she could leave the store.

144. On those occasions when HIGH was stopped by store security
for receipt inspections, she did not observe any White

shoppers being treated in the same manner as she was treated.

**N.    Racial Discrimination, Denial of Equal Benefits of the Laws, Illegal Seizure of SCOTT by Toys "R" Us and METRO ONE**

145. Between 2006 and 2007, SCOTT shopped several times at the Toys "R" Us store located in Jersey City, New Jersey, where she was stopped and asked to present her receipt for purchase of merchandise for inspection before she could leave the store.

146. On the occasions when she was stopped for receipts inspection, SCOTT did not observe any White shoppers being treated in the same manner as she was treated.

147. Toys "R" Us and METRO ONE instituted an asset protection and sales receipt verification policies, practices, and customs which violate the fundamental Civil Rights of African Americans. Said asset protection and sales receipt verification policies carried out on a daily basis subjects African Americans to unjustified and unwarranted scrutiny at Toys "R" Us' stores throughout the State of New York and the United States.

148. Defendants Toys "R" Us' and Metro One's policies have subjected African Americans to unjustified and unwarranted scrutiny. Rather than focus and devote its attention on the

28

criminal conduct of shoplifters regardless of race and color, Defendants Toys "R' Us' and Metro One's loss prevention employees, loss prevention sub-contractors, namely Metro One Loss Metro One's, Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees focus their collective attention solely on innocent African American customers, which results in a disproportionate number of African American customers being racially discriminated against, assaulted, battered, profiled, stopped, seized, searched without probable cause or legal justification.

149. African American shoppers are subjected to compulsory inspection of their sales receipts after duly making their purchases and attempt to exit Defendant Toys "R' Us' stores, whereas on the other hand White Shoppers who are similarly situated are not subjected to the same heightened and bias scrutiny and compulsory inspections of their sales receipts upon exiting Defendant Toys "R" Us' stores, at Toys "R" US' stores throughout New York State.

150. Under a pattern and practice set and enforced by Defendant Toys "R" Us and Metro One, African Americans, are subjected to unequal treatment by Toys "R" Us, METRO ONE and their employees and agents.

151. Said policy also subject African American shoppers to unlawful seizure of their persons.

152. To encourage these patterns and practices of racial discrimination, Defendant Toys "R" Us and Metro One reward their Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees with shrinkage bonuses for lower levels of shrinkage.

153. Plaintiffs seek to enjoin this conduct and to protect the rights of all African American customers throughout the United States of America.

154. Plaintiffs have no other adequate remedy at law for such deprivation of their rights, privileges and immunities.

155. Defendant Toys "R" Us has two policies for inspection and verification of sales receipts of customers exiting its stores: One policy for African Americans, wherein African American customers without being accused or suspected of shoplifting are forced by Toys "R" Us, METRO ONE and their agents to present their sales receipts before leaving the stores.

## CLASS ALLEGATIONS

156. The class which Plaintiffs seek to represent consists of:

a)    All African American shoppers who were requested to
show their purchase receipts before exiting Toys "R" Us
stores throughout the United States, and African
American shoppers who in the future will be subject to
same receipt inspection practice, while similarly
situated non-African Americans are not subjected to the
same discriminatory practice;

b)    All African American shoppers who were prevented or
those who will be prevented from making purchases at
Toys "R" Us stores throughout the United States because
of their race or color;

157. Pursuant to Rule 23 of the Federal Rules of Civil Procedure,

Plaintiffs will move this Court to declare and certify a

class of individuals, as described above.

158. The class is so numerous that joinder of all members would

be impracticable. More than tens of thousands of African

American shoppers shop at Toys "R" Us' stores daily and are

subject to Defendant Toys "R" Us' and METRO ONE'S

discriminatory asset protection and loss prevention

policies.

159. There are questions of law and law which are common to the

class, including the following:

a.    Whether the receipt verification practice in

effect at Toys "R" Us stores which is not based on

particularized suspicion of criminal conduct

violates the equal protection clause of 42 U.S.C.

1981.

b.    Whether the banning from Toys "R" Us stores those

31

who refuse to show their purchase receipts but who
have not shoplifted violates the "contract" clause
of 42 U.S.C. 1981;

c.    Whether Toys "R" Us and Metro One policy and
practice of setting up receipt inspection check
points at exit doors of Toys "R" Us' stores
situated in communities that are predominantly
African Americans; whereas no such check point
exist in communities that are predominantly
Caucasian is constitutes racial profiling and
unlawful discrimination;

e.    Whether Defendants Toys "R" Us' and Metro One's
receipt verification policy and practice violates
the Fourth and Fourteenth Amendments to the U.S.
Constitution.

160. Defendants have acted or refused to act on grounds that are
generally applicable to the class, thereby making
appropriate final injunctive relief or corresponding
declaratory relief with respect to the class as a whole.

161. The Plaintiffs know of no difficulty that will be
encountered in the management of this litigation that would
preclude its maintenance as a class action, and the class
action is superior to any other available means to resolve
the issues raised on behalf of the class.

162. The law firms This question predominates over any questions affecting only individual class members.

163. The claims of the named plaintiffs are typical of the claims of the class they seek to represent in that the named plaintiffs and all members of the proposed class are African American shoppers or potential shoppers at Toys "R" Us stores who were subjected the above-described conduct or will be so subjected in the future.

164. Seeking damages by the class representatives for their injuries benefit the class of those who have already been subjected to such invidious racial profiling.

165. Plaintiffs will fairly and adequately represent and protect the interests of the members of the class they represent. The named plaintiffs have retained competent counsel with experience in civil rights, complex and class action litigation. Accordingly, the interests of the class will be adequately protected and advanced.

166. There is no conflict of interest between the named plaintiffs and members of the class. The interests of the named plaintiffs are aligned because the members of the class have an interest in securing their right to compensatory damages as a consequence of any injuries caused by defendants' conduct. Moreover, they are interested in securing injunctive relief to prevent future injury.

167. Notice can be provided to class members by published notice since they are of a substantial number.

168. Certification of the class is appropriate pursuant to Fed.R.Civ.P. 23(b)(3) because the questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

169. This class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

170. By reason of the foregoing, plaintiffs and the class which they seek to represent have suffered loss and damage.


**CLAIMS FOR RELIEF**

**COUNT I - VIOLATION OF 42 U.S.C. § 1981 et. seq.**

171. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in those paragraphs of the complaint designated as "1" through "169" with the same full force and effect as if fully set forth herein at length.

172. Defendants violated the rights of the plaintiff under both the contract clause and the equal protection clause of Section 1981.

173. reason of the foregoing, plaintiffs have suffered loss and damage.


**COUNT II - VIOLATIONS OF 42 U.S.C. § 1983 et. seq.**

174. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in those paragraphs of the complaint designated as "1" through "173" with the same full force and effect as if fully set forth herein at length.

175. At all times mentioned herein SHERIFF and TODD were acting under color of law, as that term is understood under Federal civil rights laws.

176. Defendant Toys "R" Us, METRO ONE and their employees in Cincinnati, Ohio acted in concert with state actors to violate the civil and constitutional rights of RHODES.

177. By reason of the foregoing, plaintiffs have suffered loss and damage.


## COUNT III - CIVIL RIGHTS CONSPIRACY

178. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in those paragraphs of the complaint designated as "1" through "177" with the same full force and effect as if fully set forth herein at length.

179. By their acts and omissions as aforesaid, TOYS "R" US and METRO ONE acting by themselves and through their agents conspired together to violate the civil rights of the plaintiffs herein, and deprive plaintiffs and class members of their privileges and immunities under the laws.

180. By reason of the foregoing, plaintiffs and the class members

have suffered loss and damage.

## COUNT XII -CIVIL RIGHTS VIOLATIONS under

## NEW YORK EXECUTIVE LAW § 296

181. That Plaintiffs repeats, reiterates and re-allege each and every allegation contained in those paragraphs of the complaint designated as "1" through "180" with the same full force and effect as if fully set forth herein at length.

182. Under New York Executive Law § 296(2)(a), places of public accommodation cannot deny any of the "accommodations, advantages, facilities or privileges thereof' based on a person's race or national origin.

183. The conduct of Defendants Toys "R" Us' and Metro One's and its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees in subjecting innocent African Americans shoppers to excessive scrutiny has denied them the privileges of a place of public accommodation based on their race and/or national origin.

184. In certain stores, Defendants Toys "R" Us' and Metro One's asset protection and receipt inspection policies have had a disparate impact on innocent African American customers and have subjected innocent African American shoppers to disparate treatment.

36

185. In numerous Toys "R" Us stores, Defendants Toys "R" Us' and Metro One's and its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees have discriminated against innocent African American customers.

186. Defendants Toys "R" Us and Metro One have failed to monitor its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees adequately, and therefore are responsible for their conduct.

187. Defendants Toys "R" Us' and Metro One's and its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees has thereby violated, and continues to violate New York Executive Law §296.

188. By the reason of the foregoing, plaintiffs have suffered loss and damage.


**COUNT XIII - CIVIL RIGHTS VIOLATIONS under**

**NEW YORK CIVIL RIGHTS LAW § 40**


189. That Plaintiffs repeats, reiterates and re-allege each and every allegation contained in those paragraphs of the complaint designated as "1" through "188" with the same full

37

force and effect as if fully set forth herein at length.

190. Under New York Civil Rights Law § 40, places of public accommodation cannot "withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof' based on a person's race or national origin.

191. The conduct of Defendants Toys "R" Us' and Metro One's Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees in subjecting innocent African Americans shoppers to excessive scrutiny has denied them the privileges of a place of public accommodation based on their race and/or national origin.

192. At certain stores, Defendants Toys "R" Us' and Metro One's asset protection and receipt inspection policies have had a disparate impact on innocent African American customers, and have subjected innocent African American shoppers to disparate treatment.

193. In numerous Toys "R" Us stores, Defendants Toys "R" Us' and Metro One's its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees have discriminated against African American customers.

194. Defendants Toys "R" Us and Metro One have failed to monitor

38

its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees adequately and therefore are responsible for their conduct.

195. Defendants Toys "R" Us' and Metro One's its Peace Officers, store detectives and undercover operatives, security employees, agents, servants, trustees, licensees and/or employees have thereby violated New York Civil Rights Law § 40.

196. By virtue of Defendants' actions, Plaintiffs continue to suffer loss and damage.


## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray that the Court grant them relief as follows:

A.    Certify this case as a class action under Rule 23;

B.    Enter a declaratory judgment finding that the actions of Defendants alleged in this complaint violate 42 U.S.C. §§1981, 1983 and 1985(3), Title VII of the Civil Rights Act of 1964; 42 C.F.R. § 42.101 et seq., and the New York Executive Law § 296  et. seq., and the New York Civil Rights Law  § 40.

C.    Enter a permanent injunction barring Defendants from continuing to engage in the unlawful, discriminatory conduct

alleged in this Complaint;

D.    Enter a permanent injunction directing that Defendants take all affirmative steps necessary to remedy the effects of the discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

E.    Award compensatory damages in an amount that would fully compensate the Plaintiffs and other Class members in an amount to be determined at trial but no less than $200 million;

F.    Award punitive damages against defendants Toys "R" Us and METRO ONE, in a amount that would punish said defendants for the willful, wanton, and reckless misconduct  alleged in this complaint, and that would effectively deter the defendants from future discriminatory behavior in an amount to be determined at trial but no less than $200 million;

G.    Award Plaintiffs and other Class members their reasonable attorneys' fees; and

H.    Other and further relief as may be just and equitable.

## <u>JURY TRIAL  DEMANDED</u>

Plaintiffs  demand a trial by jury on all issues of fact and
damages.


Dated:    Brooklyn,  New York
          February 7, 2008


                              LAW OFFICES OF K.C. OKOLI, PC
                              Attorneys for Plaintiff
                              NATHANIEL W. LEWIS
                              330 Seventh Avenue
                              15th Floor
                              New York, N.Y. 10001
                              (212) 564-8152


                              By:_____/S/K.C. Okoli_____
                                   K.C. OKOLI (KO7222)


                              LAW OFFICES OF EMMANUEL ROY, P.C.
                              26 Court Street, Suite 1503
                              Brooklyn, New York 11242
                              (718) 797-2553
                              Facsimile: (718) 797-3994
                              Email: NYLAW1@Gmail.com


                              By:_____
                              Emmanuel Roy, Esquire (ER-1756)


                              **ATTORNEYS FOR PLAINTIFFS**